# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEALED | : | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| Plaintiffs, | : | |
| vs. | : | CIVIL ACTION NO. |
| SEALED | : | COMPLAINT |
| Defendants. | : | JURY TRIAL DEMANDED |
| | : | **DO NOT PLACE IN PRESS BOX** |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* LIONEL HARRIS, | : <br> : <br> : | **FILED UNDER SEAL PURSUANT TO**<br>**31 U.S.C. § 3730(b)(2)** |
| Plaintiffs, | : <br> : | COMPLAINT |
| vs. | : <br> : | JURY TRIAL DEMANDED |
| AKUMIN, INC.,<br>DELAWARE OPEN MRI, L.L.C.,<br>DELAWARE OPEN MRI II, L.L.C.,<br>DELAWARE OPEN MRI III, L.L.C.<br>DELAWARE OPEN MRI RADIOLOGY<br>ASSOCIATES, LLC, | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| Defendants. | : <br> : | **DO NOT PLACE IN PRESS BOX** |

On behalf of the United States of America pursuant to the United States False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), Plaintiff-Relator Lionel Harris ("Relator") files this *qui tam* Complaint for treble damages and civil money penalties against defendants Akumin, Inc. ("Akumin"), Delaware Open MRI, L.L.C., Delaware Open MRI II, L.L.C., Delaware Open MRI III, L.L.C., and Delaware Open MRI Radiology Associates, LLC (with Akumin, "Defendants"). This lawsuit arises out of Akumin's knowing (1) submission of false and fraudulent claims for payment to federal health care programs for diagnostic imaging studies with contrast performed without direct physician supervision in violation of federal rules and regulations and (2) violations of the federal Anti-Kickback Statute by paying physicians for sham "supervision" that is not occurring at all.  In support of these claims, Relator alleges as follows:

## I.      INTRODUCTION

1.      In this action, Relator alleges that Defendants have knowingly submitted false and fraudulent claims for payment to federal health care programs (including Medicare, Medicaid, and TRICARE) for diagnostic imaging studies with contrast without direct physician supervision, in contravention of federal rules and regulations.

2.      Defendants have also violated the Anti-Kickback Statute by paying physicians for "supervision" that is not occurring at all, thereby allowing Defendants to continue billing federal health care programs for these studies.

## II.      THE PARTIES

### A.      **Plaintiff-Relator**

3.      Plaintiff-Relator Lionel Harris is an individual citizen of the State of Delaware.

4.      He is a certified x-ray technician and was employed by Akumin between May 2017 and May 2019.  Since April 2018, Relator also has worked as an x-ray technician on an independent contractor basis for another medical imaging company.

5.      Relator has an Associates Degree in Radiologic Technology from Delaware Technical Community College and a Bachelor's Degree in Healthcare Administration from Wilmington University, and Relator has started work towards a Master of Science in Management with a Concentration in Healthcare Administration from Wilmington University.

B.   **Defendants**

1.   **Akumin**

6.   Akumin, Inc. is a Canadian company headquartered in Toronto, Ontario. Akumin is listed on the Toronto stock exchange under the ticker "AKU" with a United States OTC ticker listing of "AKMNF."

7.   On information and belief, Akumin's United States headquarters is located in Jacksonville, Florida.

8.   Akumin owns and operates more than 90 freestanding, outpatient diagnostic imaging centers in six states around the country, including nine such centers in Delaware. Akumin's imaging centers are Independent Diagnostic Testing Facilities ("IDTFs") under the applicable federal statutes and regulations. The other five states in which Akumin owns and operates IDTFs are Florida, Illinois, Kansas, Pennsylvania, and Texas.

9.   Akumin's Delaware centers were previously owned and operated by Delaware Open MRI, a privately-owned company founded in 1997. Akumin acquired Delaware Open MRI within the last few years.

10.   Akumin employs the individuals responsible for the illegal conduct described herein.

2.   **Delaware Open MRI**

11.   Delaware Open MRI, L.L.C. is a Delaware limited liability company with a principal place of business at 1209 Orange St., Wilmington, DE 19801.

12.   Delaware Open MRI II, L.L.C. is a Delaware limited liability company with a principal place of business at 1209 Orange St., Wilmington, DE 19801.

13. Delaware Open MRI III, L.L.C. is a Delaware limited liability company with a principal place of business at 1209 Orange St., Wilmington, DE 19801.

14. Delaware Open MRI Radiology Associates, LLC is a Delaware limited liability company with a principal place of business at 3411 Silverside Road Tatnall Building, Ste 104, Wilmington, DE 19810.

**III.   JURISDICTION AND VENUE**

15. The Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331 and 1345.

16. Venue is proper in this judicial district pursuant to 31 U.S.C. § 3732(a) and/or 28 U.S.C. § 1391(b).

17. This Court has personal jurisdiction over the defendant under 31 U.S.C. § 3732(a) because defendant transacts business and submitted false or fraudulent claims directly or indirectly to the federal government in this judicial district.

18. Relator has direct and independent knowledge on which the allegations are based, is an original source of this information to the United States, and he has voluntarily provided the information to the United States before filing this action based on the information.

19. This suit is not based on prior public disclosures of allegations or transactions in a criminal, civil or administrative hearing, lawsuit, investigation, audit or report, or from the news media.  To the extent that there has been any public disclosure unknown to Relator, he is an original source under 31 U.S.C. § 3730(e)(4).

IV.  **APPLICABLE LAW**

    A.  **Affected Government Programs: Medicare, Medicaid, and TRICARE**

20.  Medicare is a federal health insurance system for people 65 and older and for people under 65 with certain disabilities. Medicare Part A provides hospital insurance for eligible individuals. *See* 42 U.S.C. §§1395c-1395i. Medicare Part B is a voluntary subscription program of supplementary medical insurance covering items and services other than hospitalization expenses. *See* 42 U.S.C. § 1395k(a)(2)(B).

21.  Medicaid is a federal health insurance system that is administered by the states and is available to low-income individuals and families who meet eligibility requirements determined by federal and state law. Medicaid pays for items and services pursuant to plans developed by the states and approved by the United States Department of Health and Human Services ("HHS") through the Centers for Medicare & Medicaid Services ("CMS"). 42 U.S.C. §§ 1396a(a)-(b). States pay health care providers, including physicians, according to established rates, and the federal government then pays a statutorily established share of "the total amount expended … as medical assistance under the State plan." *See* 42 U.S.C. §§ 1396b(a)(1). At all relevant times, the United States provided federal funds to the Medicaid programs of Delaware, which are governed by the Department of Health and Social Services. Thus, all claims or requests for payments submitted to the Medicaid programs are subject to liability under the False Claims Act pursuant to 31 U.S.C. § 3801(a)(3)(B)(ii).

22.  TRICARE, administered by the United States Department of Defense, is a health care program for individuals and dependents affiliated with the armed forces.

### B. Regulations Applicable to Supervision of Diagnostic Studies

23. All diagnostic x-ray and other diagnostic tests – including magnetic resonance imaging – covered under section 186l(s)(3) of the Social Security Act and payable under the physician fee schedule must be furnished under the appropriate level of supervision by a physician. *See* 42 C.F.R. § 410.32(b)(l).

24. Medicare provides for three levels of supervision for diagnostic x-ray and other imaging studies: general supervision (minimum standard); direct supervision (intermediate standard); and personal supervision (maximum standard). *Id.* § 410.32(b)(3). All diagnostic x-ray and other imaging studies must at least be furnished under at least a general level of physician supervision. *Id.* When Medicare requires direct or personal supervision, "physician supervision at the specified level is required throughout the performance of the test." *Id.*

25. At all relevant times, Medicare has defined "direct supervision" as follows: "Direct supervision in the office setting means the physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed." *Id.* § 410.32(b)(3)(ii); *see generally* Medicare Benefit Policy Manual, Ch. 15 § 80.

26. Medicare provides that services furnished without the required level of supervision are not reasonable and necessary. *Id.* § 410.32(b)(l); see 42 C.F.R. § 41 1.15(k)(l) ("The following services are excluded from coverage: *Any services that are not reasonable and necessary* for one of the following purposes: (1) For the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.") (emphasis in original). Medicare precludes payment for services that are not reasonable and necessary for the diagnosis

or treatment of illness or injury or to improve the functioning of a malformed body member. 42 U.S.C. § 1395y(a)(l)(A).

      C.    **Anti-Kickback Statute**

27.    The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b ("AKS"), prohibits the knowing and willful payment of remuneration to induce referrals for services that may be paid for by government health care programs. To succeed on a claim under the AKS, a plaintiff must prove that the defendant (1) knowingly and willfully (2) offered or paid any remuneration (3) to induce a physician to refer a patient for services (4) that may be paid by a federal health care program. *See* 42 U.S.C. § 1320a-7b(b)(2). The AKS defines "remuneration" as "transfers of items or services for free or for other than fair market value." *See* 42 U.S.C. § 1320a-7a(i)(6).

28.    A violation of the AKS can form the basis of liability under the FCA.

**V.    THE UNITED STATES FALSE CLAIMS ACT**

29.    The United States False Claims Act prohibits, *inter alia*, the following:

> knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval;
>
> knowingly making or using (or causing to be made or used) a false record or statement material to a false or fraudulent claim; and
>
> conspires to commit either of the above.

31 U.S.C. §§ 3729(a)(1)(A),(B) (G) (West 2010).

**VI.    DEFENDANT'S VIOLATIONS OF THE FCA**

      A.    **Radiology Studies Requiring Direct Supervision**

30.    This Complaint references three types of radiology studies:

**X-rays**. X-ray imaging uses electromagnetic radiation to create images of structures and tissues inside the body. X-rays are particularly useful in diagnosing bone fractures and tumors or other abnormal masses.

7

>   **CT scans**. Computed Tomography exams (or CT scans) combine a series of x-ray images taken from different angles and use computer processing to create cross-sectional (or even three dimensional) images of bones, organs and other tissues.
>
>   **MRIs**. Magnetic Resonance Imaging (MRI) uses a powerful electromagnetic field and radio waves to create detailed images of organs, tissues and blood vessels in the body.  Unlike x-rays and CT scans, MRIs do not use radiation. MRIs are often used in neuroradiology to diagnose injuries and conditions involving the central nervous system, including the brain and spinal cord.

31. If ordered by the physician requesting the study, CT scans and MRIs may be performed using contrast material to visualize certain structures more clearly. (X-rays are not performed with contrast.)

32. Contrast material is typically injected intravenously by the technician administering the test. Common contrast material substances include iodine, barium, and gadolinium. Gadolinium is a paramagnetic metal ion, which move differently within a magnetic field, making gadolinium useful for MRI in particular.

33. Gadolinium-based contrast agents (or "GBCAs") may cause allergic reactions, ranging from mild to severe; severe allergic reactions can result in death. Some patients develop skin conditions such as rash, sweating, itching, hives, and facial swelling. In addition, GBCAs may irritate the veins into which they are injected, causing irritation of the blood vessels and skin, and causing the formation of blood clots.  Certain patients with acute or chronic severe renal insufficiency are also at risk of developing nephrogenic systemic fibrosis ("NSF") disease.

34. Medicare assigns "numerical levels" to the relevant Current Procedural Terminology ("CPT") or Healthcare Common Procedure Coding System ("HCPCS") codes in the Medicare Physician Fee Schedule Database to define the level of physician supervision required for a given procedure. *See* Medicare Benefit Policy Manual, Ch. 15 § 80.  Where

Medicare assigns a numerical level of "2," the procedure "must be performed under the direct supervision of a physician." *Id.*

35. The Medicare Physician Fee Schedule Database contains a listing of all MRI procedures that require the direct supervision of a physician, as indicated by the numerical level "2."

36. In general, MRI procedures involving the injection of contrast must be performed under the direct supervision of a physician because of the risk of side effects.

> **B. Akumin's conduct in Delaware in violation of the direct supervision regulations**

37. Relator was hired in May 2017 for the position of *per diem* x-ray technician. His job was to perform x-ray services on an as-needed basis at any of Akumin's nine Delaware locations.

38. Relator has worked as an MRI tech in all but two of Akumin's Delaware locations and has learned of the conduct described below.

> **1. Akumin's performance of contrast studies without a physician's supervision**
>
> **a. Dover 2 Location**[1]

39. Relator worked at Akumin's "Dover 2" location on approximately 20 occasions.

40. He personally observed the injection of contrast by other techs without the direct supervision of a physician.

41. Physician 1[2] is an orthopedic physician whom Akumin deems to be the supervising physician for these studies.

---

[1] 240 Beiser Blvd, Ste 100, Dover, DE 19904.
[2] Relator is using pseudonyms for purposes of this complaint but has provided the names and addresses of these physicians to the government.

42. Relator never saw Physician 1 in the Dover 2 suite (Suite 100) during any contrast injection or at any other time.

43. Relator estimates that Physician 1 and Physician 1's practice are responsible for a high percentage of patient referrals to Akumin's Delaware locations throughout the state.

44. E.W. is a Medicare beneficiary who underwent a contrast study at Dover 2 without direct physician supervision on 12/7/17 and, on information and belief, Akumin submitted a claim for reimbursement to Medicare that was false and fraudulent.

### b.  Wilmington Bancroft Location[3]

45. Relator worked at Wilmington Bancroft on approximately 60 to 70 occasions and personally injected contrast dye approximately 20 times without the direct supervision of a physician.

46. Physician 2 is the physician whom Akumin deems to be the supervising physician for these studies.

47. Relator never saw Physician 2 in the Wilmington Bancroft suite during any MRI with contrast that he has performed.

48. Relator did, however, both observe and participate in the process by which Physician 2 is paid $50 per study. Each day that a contrast study is performed, someone from the Akumin office goes to the office of Physician 2 with a patient list and that list is signed either by Physician 2 (or by someone on Physician 2's behalf) and returned to Akumin for payment. Another Akumin MRI technician informed Relator that Physician 2 is paid $50 per study.

49. The third injection that Relator ever administered was at Bancroft in approximately August 2017. On that occasion, after Relator injected the contrast with another

---

[3] 1010 N. Bancroft Pkwy, Ste 101, Wilmington, DE 19805

Akumin MRI technician present but no doctor in the suite, the patient started turning blue and vomiting. Relator removed the needle and he and the other MRI technician stayed with the patient until the patient recovered. The patient said afterwards that he had had similar reactions to contrast in the past. No doctor was ever called and, to Relator's knowledge, no report or other documentation of the incident was ever created.

50. G.N. is a Medicare beneficiary who underwent a contrast study at Bancroft without direct physician supervision on 12/7/17 and, on information and belief, Akumin submitted a claim for reimbursement to Medicare that was false and fraudulent.

### c. Wilmington Silverside Location[4]

51. Relator worked at Wilmington Silverside on approximately 25 occasions and personally injected five patients with contrast without the direct supervision of a physician.

52. He also personally observed the injection of contrast by other techs without the direct supervision of a physician.

53. Physician 3 uses a reading room at Wilmington Silverside on Tuesdays and Thursdays but the site is open Monday through Friday and performs contrast studies on Mondays, Wednesday and Fridays too, when no physician is present in the suite.

54. There is an orthopedic surgery practice in the same building, but Relator never saw and is not aware of any supervising physician arrangement with the physicians who work there. He never saw them in the Akumin suite except in connection with their own patients.

55. S.W. is a Medicare beneficiary who underwent a contrast study at Silverside without direct physician supervision on 8/3/17 and, on information and belief, Akumin submitted a claim for reimbursement to Medicare that was false and fraudulent.

---

[4] 2501 Silverside Rd, Ste 2, Wilmington, DE 19810.

### 2. Akumin's performance of contrast studies without a physician's direct supervision at its Seaford Location[5] until January 2018

56. Relator worked at Seaford on approximately 80 to 90 occasions and personally observed a nurse practitioner inject contrast without the direct supervision of a physician.

57. When *United States ex rel. Robin White v. Orthopaedic and Neuro Imaging, LLC*, No. 13-CV-1109 (D. Del.) ("*ONI* Case") was unsealed in January 2018, Akumin stopped performing contrast studies on Medicare beneficiaries and, since then, has referred all such patients to its Milford and Dover 2 locations.

58. Prior to January 2018, Akumin had regularly been performing contrast studies without any physician supervision.

59. Until 2015, Akumin was administering contrast without any health care professional in the vicinity until a technician complained that this was illegal.

60. Akumin then hired the nurse practitioner to provide supervision, even though this did not comply with federal law because the nurse practitioner is not a doctor.

61. This relationship continued until the *ONI* case was unsealed.

62. J.C. is a Medicare beneficiary who underwent a contrast study at Seaford without direct physician supervision on 5/22/17 and, on information and belief, Akumin submitted a claim for reimbursement to Medicare that was false and fraudulent.

### C. Akumin's conduct outside of Delaware in violation of the direct supervision regulations

63. According to its website, Akumin owns and operates 22 radiology clinics in Texas.

64. Gilbert Ortiz is an experienced radiology technician who spent more than 12 years working for Akumin or the predecessor company that it acquired (Preferred Imaging). Ortiz

---

[5] 300 Health ServicesDr, Ste 303 Seaford, DE 19973

managed approximately 10 of Akumin's clinics in Texas and, at the end of his tenure, he was given managerial responsibility for Delaware as well.

65. On February 24, 2018, Ortiz ran a training in Pennsylvania for all of Akumin's Delaware and Pennsylvania sites.

66. All of the techs and managers for these sites, including Akumin's Regional Director for the State of Delaware, attended the training.

67. The training included purported ACLS training given by a firefighter from Texas.

68. Ortiz explained that Akumin was providing ACLS training because the company takes the position that having an ACLS certified technician satisfies the physician supervision requirement.

69. Ortiz explained further that, in Texas, the company uses technicians for coverage and does not have physicians providing supervision at any sites.

70. In response to direct questioning from Relator and others, Ortiz confirmed that Akumin does not have physicians providing direct supervision of contrast studies in Texas.[6]

---

[6] The ACLS training only lasted approximately three to four hours and ended with an "open book" test, where the instructor asked the test questions and gave all participants the correct answer. The instructor also recommended that participants get at least one or two questions wrong, because it would be suspicious if everyone got a perfect score. Relator's understanding is that the instructor also provided the ACLS training to Akumin's techs in Texas.

    **D.**    **The Government's Damages**

71. Akumin has knowingly submitted false and fraudulent claims for payment to federal health care programs (including Medicare, Medicaid, and TRICARE) for diagnostic imaging studies with contrast without direct physician supervision, in contravention of federal rules and regulations.

72. In addition, Akumin has violated the Anti-Kickback Statute by paying physicians, including Physician 2 at a minimum, for "supervision" that is not occurring at all, thereby allowing Akumin to continue billing Medicare for these studies.

**COUNT I**

**VIOLATION OF THE FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(A)**

73. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

74. Defendants knowingly presented false and fraudulent claims for payment or approval to the United States—*i.e.*, the foregoing false and fraudulent claims for payments from Amtrak—in violation of 31 U.S.C. § 3729(a)(1)(A).

75. Said false and fraudulent claims were presented with defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

76. The United States relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid for these false and fraudulent claims had it known the falsity of said claims.

77. As a direct and proximate result of the false and fraudulent claims made by defendants, the United States has suffered damages and therefore is entitled to recovery as

provided by the False Claims Act in an amount to be determined at trial, plus civil penalties up to the maximum permitted by law for each such violation of the False Claims Act.

WHEREFORE, Relator requests that judgment be entered against Defendants for treble the amount of the United States' damages to be determined at trial, and all allowable civil penalties, fees, interest and costs under the False Claims Act and for all other and further relief as the Court may deem just and equitable.

## COUNT II

### VIOLATION OF THE FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(B)

78. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

79. Defendants knowingly made, used, or caused to be made or used false records or false statements material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

80. Defendants' knowingly false records or false statements were material to the false and fraudulent claims for payments it made and continues to make to the United States.

81. The materially false records or false statements that defendant made or caused to be made are set forth above and include, but are not limited to, false statements concerning diagnostic imaging studies performed with contrast without direct physician supervision.

82. These said false records or false statements were made, used, or caused to be made or used with defendant's actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

83. As a direct and proximate result of these materially false records or false statements, and the related false or fraudulent claims made by defendant, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus civil penalties up to the maximum permitted by law for each such violation of the False Claims Act.

WHEREFORE, Relator requests that judgment be entered against Defendants for treble the amount of the United States' damages to be determined at trial, and all allowable civil penalties, fees, interest and costs under the False Claims Act and for all other and further relief as the Court may deem just and equitable.

Respectfully submitted,

**SHELSBY & LEONI, PA**

Dated: August 28, 2019       BY:    */s/ Robert J. Leoni*
ROBERT J. LEONI, ESQ.
221 Main Street
Wilmington, DE 19804-3904
Tel: (302) 995-6210
rleoni@mslde.com

**YOUMAN & CAPUTO, LLC**
DAVID J. CAPUTO, ESQUIRE*
ZACHARY ARBITMAN, ESQUIRE*
3803 West Chester Pike, Suite 150
Newtown Square, PA 19073
(215) 302-1999
dcaputo@youmancaputo.com

**JOSEPH TRAUTWEIN & ASSOCIATES, LLC**
JOSEPH TRAUTWEIN, ESQUIRE*
17 Auchy Road
Erdenheim, Pennsylvania 19038
(215) 764-2301
jtrautwein@cpmiteam.com
*Attorneys for Plaintiff-Relator*

**pro hac vice* forthcoming